Bower *et al. v.* Bower *et al.*

No. 17,214.

## BOWER ET AL. *v.* BOWER ET AL.

APPELLATE PROCEDURE.—*Evidence Excluded.—Presumption.*—Evidence will be presumed on appeal to have been properly excluded, where it does not affirmatively appear that it was competent for the purpose for which it was offered.

SAME.—*Reversible Error.—Refusal to Submit Interrogatory.*—Refusal to submit an interrogatory as to the mental capacity of a testator is reversible error, under section 555, R. S. 1894, making it the duty of the court, on request, to require special findings of fact.

ESTOPPEL. —*Contest of Will.—Advancement.—Heir.*—A daughter is not estopped to contest her father's will, because of a conveyance of land by him to her, in the nature of an advancement, in consideration of which she agreed to make no claim against his estate.

EVIDENCE.—*Physician and Patient.—Mental Capacity.*—A physician, employed by testator, may testify as to facts in regard to the latter's mental capacity, learned or observed by him in a conversation with him, after the services were rendered, when he called upon him to collect his bill.

Same.—*Statements of Testator.—Mental Condition.—Will.*—Statements of a testator, three or four years before the execution of the will, tending to show his mental condition, may be given in evidence by a non-expert witness, as a basis for an opinion by her as to his competency to make the will.

Same.—*Will.—Mental Capacity.—Declarations of Testator.*—The declarations of a testator, on the subject of making wills, are competent, on a contest of his will on the ground of mental incapacity.

Same.—*Will.—Mental Capacity of Testator.—Tax Lists.*—Evidence that a testator, for several years before his death, did not make out his own tax-lists, but that they were made out and sworn to by his son, is admissible on the question of the testator's testamentary capacity.

Same.—*Will.—Mental Capacity.*—A witness may testify to facts, tending to show the mental incapacity of a testator, although he gives no opinion as to the latter's sanity.

Same.—*Motion to Strike Out, When Made Too Late.*—A motion to strike out evidence introduced on direct examination is too late when first made at the close of the cross-examination.

From the Clark Circuit Court.

*Burtt & Taggart, M. Z. Stannard* and *C. L. Jewett,* for appellants.

*J. K. Marsh* and *W. H. Watson,* for appellees.

JORDAN, J.—This action was instituted by the appellees in the Clark Circuit Court to contest the validity of the will of Andrew Bower, deceased. The complaint, *inter alia,* shows that the testator died in Clark county, Indiana, on July 18, 1892, leaving surviving him the appellees, who are his children and grandchildren and heirs at law. The will in contest bears date of September 5, 1887, and its validity is assailed upon the grounds :

1.   That the testator at the time of its execution was of unsound mind.

2.   That it was unduly executed.

3.   That it was procured to be executed through the fraud of the defendants.

A trial by a jury resulted in a verdict in favor of the

Bower *et al. v.* Bower *et al.*

contestants, and over a motion for a new trial the court adjudged the will to be null and void, and revoked and set aside the probate thereof.

Appellants, in this appeal, have assigned five alleged errors of the trial court, but the 3rd and 5th are the only ones that are argued by their learned counsel, and therefore the consideration of the others must be deemed to be waived.

Appellants in the court below filed an answer to the complaint in two paragraphs. The first was a general denial. The second was intended to be in bar, and was directed to so much of the complaint as alleged a cause of action in favor of appellee Margaret C. Bower.

By this paragraph certain facts were averred showing that this appellee, who is a daughter of the deceased testator, had, on March 15, 1882, received from the latter a conveyance of certain described real estate, situated in the aforesaid county of Clark, and that said realty had been received by her in full consideration of all claims as an heir against her said father's estate, and it was therein prayed that by reason of said facts she be barred and estopped from prosecuting the action.

On motion of the appellee Eliza Bower, the court struck out this second paragraph, and by their third assignment appellants affirm that in this the court erred. They insist that the provisions made for appellee by the alleged conveyance of land to her were in the nature of an advancement, and in consideration of the facts that she received the same, and agreed to make no claim against her father's estate, she was estopped from joining as a contestant in this action. Counsel cite us to no authority, and we are not aware of any that will support this contention. If the conveyance of the property was by way of advancement in full of her interest as an heir in the estate under an agreement, then it

perhaps might be a matter proper to be set up and considered against Margaret C., if the estate should come to be partitioned, or distributed under the statutes of descent.   See section 2479, R. S. 1881 ; section 2636, R. S. 1894 ; section 1189, R. S. 1881 ; section 1203, R. S. 1894.    See *Stokesberry* v. *Reynolds*, 57 Ind. 425 ; *Brown* v. *Brown*, 139 Ind. 653.   This point, however, is not before us in this case, hence we do not decide it. In any event, however, we think that the facts set up in this paragraph were not in any way relevant as a defense in bar of appellee's right to contest the will. They did not confess and avoid the cause of action alleged in the complaint, nor tend to constitute a cause of defense thereto and would have served only to inject a collateral issue into the proceedings, and the court did not err in sustaining the motion to reject this paragraph.

Under the fifth assignment it is averred that the court erred in overruling the motion for a new trial.   Appellants do not ask that we review the evidence in order to ascertain if it is sufficient to support the verdict of the jury.   They say that it was a duty which rested upon the trial judge, and if any injustice was done by not sustaining the motion for a new trial upon that ground, the blame must be chargeable to him, and not to this court.   It is next claimed that the court erred in not striking out certain declarations of the testator, testified to by Margaret C. Bower.   The alleged objectionable evidence given by this witness is substantially as follows :

"He ( referring to the testator ) got to talking of some one that had made a will, and he said 'it was foolishness for any man to make a will,' and I said, 'why, ain't you going to?' and he said, 'No, I never allow to make a will,' and I said, 'why,' and he said, 'it was not right to make a will.'"

The objections to this evidence as stated in the motion to strike out were:

1.  That it was hearsay.

2.  That these declarations were made prior to the execution of the will, and in the absence of the defendants.

3.  Because they did not tend to support the opinion of the witness as to the mental condition of the testator at the time of the execution of the will.

This witness seems to have been examined by appellee, relative to the testator's alleged unsoundness of mind. She detailed to the jury conversations had with him, and his appearance, and condition for a number of years before the execution of the will, and on down to his death. These particular declarations, against which the objections are urged, were made in one of the several conversations referred to by this witness, and occurred as the witness said, about ten years prior to the trial, which apparently made the conversation occur about four years before the date of the execution of the will. After stating all of the facts to the jury, the witness was asked whether or no, in her opinion, the testator, was, at the time of the execution of the will in question, a person of sound or unsound mind, and she answered that she thought he was of unsound mind.

Appellants contend that the statements made by the testator in this conversation, about making a will, did not tend to support the opinion given by this witness, for the obvious reason, as they say that they were made some three or four years before the will was executed, and therefore, too remote from the time which the witness was asked to give her opinion. This witness was not an expert, and therefore, to render her opinion competent as to the mental condition of the testator, she was first required to state to the jury the facts upon which it was

Bower *et al. v.* Bower *et al.*

founded. This necessarily included what the testator said in conversations had, and the manner in which he conducted himself, etc. *Staser* v. *Hogan*, 120 Ind. 207.

While it is true that in cases like the one at bar, where the mental capacity of the testator is involved, the principal question under investigation upon this issue is, was he of unsound mind at the time the will in controversy was executed? However, as bearing upon the mental condition of his mind at this given time, facts and circumstances which tend to show his mental condition, both prior and subsequent to the execution of the will in contest, may be received in evidence. This rule is recognized by the decisions of this court. *Dyer* v. *Dyer*, 87 Ind. 13; *Staser* v. *Hogan, supra.* Of course the period of time that may be covered by the examination, relative to the mental capacity of the person in question, both prior and subsequent to the execution of the will, under all the circumstances in each particular case, must necessarily be left, to a great extent, to the sound discretion of the trial court, the abuse of which may be subject to review upon appeal.

Under the rule permitting a nonexpert to give an opinion, it may be, and frequently is, difficult to fix a limit to the facts about which the witness may testify, as it is evident that the weight of the opinion given must of necessity depend upon the facts upon which it is based. *Cline* v. *Lindsey*, 110 Ind. 337; *Burkhart* v. *Gladish*, 123 Ind. 337.

The opinion is of weight only so far as it is reasonably supported by the facts. The rule is well stated by a standard author :

"On the whole, the issue of mental soundness or unsoundness is not to be decided upon the mere opinions of witnesses, however numerous and respectable, but each opinion should be tested by the facts in the case, in

order to judge of its probable correctness. It is not the opinion of witnesses upon which reliance is to be placed, by the triers of the case, but from the premises which supplied the conviction in the minds of the several witnesses, the court, or jury, aided by these opinions, and by the maxims of law, must form its own independent conviction and decide accordingly." Schouler Wills, section 209.

If any or all of the facts did not tend to sustain the opinion of the witness, counsel for appellants had the right of testing the same by a cross-examination for the purpose of enabling the jury to properly estimate the weight, if any, to which the opinion of the witness was entitled. *Johnson* v. *Thompson*, 72 Ind. 167 ; *Louisville, etc., R. W. Co.* v. *Wood*, 113 Ind. 544.

The declarations of a testator upon the subject of making wills are competent when his will is contested on the ground of mental incapacity. *Staser* v. *Hogan*, *supra*; *Conway* v. *Vizzard*, 122 Ind. 266.

It must be presumed, until the contrary appears, that the witness based her opinion, not alone upon the declarations of the testator relative to making a will, but upon all the facts and circumstances detailed by her.

As the declarations of the testator were admissible upon the issue of his mental capacity, we must presume that they were admitted for that purpose, and so considered by the jury. And the question as to the extent of support, if any, which they lend to the opinion given, was a matter to be determined by the jury. It follows that there is no apparent error in the action of the court in refusing to strike out this evidence.

On the trial Dr. W. P. McGlynn was called as a witness in behalf of the plaintiffs. He had been formerly employed by the testator as a physician. The court would not permit him to disclose anything in evidence

of which he had acquired knowledge in the discharge of his professional duty, but ruled that the witness should be allowed to state what he had observed relative to the testator, independent of any facts ascertained by him in the course of his professional business. Under this ruling of the court the doctor was permitted to state that in the latter part of 1891, he went to see the testator for the purpose of collecting some money which was due him from the latter for services rendered him as a physician. He further testified that he met the testator in the road near his home, and that the old gentleman did not know him, and asked who he was, etc. The witness also testified as to the appearance of the testator upon this occasion, and also as to his mental and physical condition. It is insisted by appellants that this testimony was incompetent, for the reason that the knowledge of the facts stated, to some extent, was acquired by the physician in the discharge of his professional duty, and in support of their contention they cite *Heuston* v. *Stimpson*, 115 Ind. 62.

We cannot concur with counsel in this contention, that the witness testified in violation of the rule laid down in the case cited. What he learnt or observed in this conversation with the testator in the road, when he called upon him to collect the bill for services before rendered, did not come under the protection of the rule prescribed by clause four of section 497, of the Revised Statutes of 1881 (Section 505, R. S. 1894.) The disclosure of the facts stated by the testator under the circumstances, so far as it appears, certainly cannot be said to be forbidden by this statute. The call made by the witness was in relation to a financial matter, and in no manner akin to one made in the course of professional business. He did not expose or divulge any evidence, the knowledge of which he had acquired through pro-

fessional relations with the testator. While it is true that
the rule which forbids a physician to disclose in evidence,
matters communicated to him in the course of his pro-
fession is a salutary one, nevertheless it cannot be ex-
tended beyond its evident letter and spirit.

It is also claimed that this evidence was not competent
for the reason that, it was subsequent to the execution
of the will. We have hereinbefore considered and passed
upon this question, adversely to appellants' contention.
James Fifer, a witness for appellees, testified relative to
his acquaintance with the testator, and about conversa-
tions and transactions had with him before and after the
execution of the will, down to some time in the year of
1891, or probably in 1892. He described his condition
at these various times, and described his infirmities,
which he, the witness, had observed. After detailing
to the jury all of these facts, his direct examination
closed without the witness giving, or being asked to ex-
press an opinion as to the sanity of the testator. At the
close of the cross-examination of this witness by appel-
lants they unsuccessfully moved the court to strike out
all of his evidence except that relating to the borrowing
of money, and the valuation of real estate, for the prin-
cipal alleged reason, that no opinion was called for or
given by him as to the mental condition of the testator.
We think that this motion was not seasonably made by
appellants for the reason that it should have been inter-
posed before they began their cross-examination.

By this motion they, in effect, not only moved the
court to reject the evidence elicited from this witness by
the appellees, but that also given by him in response to
their cross-examination. But barring this phase of the
question, the ruling of the court upon the motion was
correct. The failure upon the part of appellees to ask
or to obtain the opinion of the witness did not render

the facts stated by him, and otherwise competent, subject upon motion of the adverse party to be rejected and withdrawn from the jury. The rule which allows an opinion to be expressed is not imperative against the party calling the witness, but permissive of the right to ask for the opinion. It is said to be one of necessity, based upon the proposition that there may be something about the looks, deportment, etc., of the person whose mental condition is under investigation, that may conduce to the conclusion that he is of unsound mind, and which cannot be described in words by the witness. *Cline* v. *Lindsey, supra,* and cases cited.

The facts stated by the witness do not depend upon the opinion that may be given, and it is not the latter that makes them competent. The opinion, generally speaking, is only of value and weight to the extent that it is supported or borne out by the facts upon which it rests. Considering the reason on which the rule is founded, it is obvious, we think, that after the facts tending to show the mental condition of the person in question, have been elicited, it then becomes a matter optional, so far as the party calling the witness is concerned, whether he will exercise this right, and press the examination to the extent of asking him to express an opinion, or refrain from doing so, and leave the jurors to draw their own conclusions from the facts detailed by the witness. The motion to strike out this evidence was, therefore, properly overruled. Complaint is made upon the grounds that the township assessor, a witness for the appellees, was permitted to testify that for the years of 1891 and 1892, the testator did not make out his own tax-lists, and that these lists were made out and sworn to by his son, William E. Bower, one of the appellants. These tax lists seem to have been offered and admitted in evidence over appellants' objection along

with that given by the witness relating thereto. The objections urged in the motion to strike out this evidence were : That it was a matter subsequent to the execution of the will, and that the declarations of the testator in the lists in question were made at a time, and upon an occasion, other than that upon which the will was executed. This testimony was not open to these objections, for the reason that it seems to be in line with other testimony given, tending to show that the testator, for some years prior to his death, had been unable to, and did not attend to his own business, and that it was transacted by his said son, William E. Bower. The fact that any of the appellants, or the testator's family, attended to his business, and otherwise treated him as being incapable to act for himself, was a proper matter to be shown at least as bearing upon his mental capacity. The assessor having stated that the tax lists were made out by the appellant, William E. Bower, they might be received, along with this evidence, as tending to corroborate that statement. Where evidence is not wholly incompetent in a cause for any purpose, it is not error to admit it. The action of the court in excluding the receipt of Margaret C. Bower, being the same mentioned in the second paragraph of the answer, and heretofore considered, is complained of and criticised by appellants. This document, which was offered in evidence by them, bears date of July 27, 1882, and is an acknowledgment upon the part of the appellee Margaret C., that she had received a certain tract of real estate from her father, the testator, and that she had agreed to make no further claims upon his estate.

At the time appellants offered this receipt in evidence, they stated to the court that they did so for the purpose of showing the relations existing between this daughter and her father, prior to the execution of the will.

*Prima facie,* this paper was not relevant evidence under the issues in favor of appellants. We are not cited to any evidence in the record given by appellees, whereby it was rendered necessary for appellants to show the relations existing between the testator and this daughter, before the execution of the will. As it does not affirmatively appear that this evidence was competent, for the purpose for which the same was offered, under a well settled rule of appellate procedure, we must presume in favor of the ruling of the trial court.

Appellants at the proper time, and in due form, presented to the court five interrogatories, and requested that they be submitted to the jury and answers returned thereto, in the event that they returned a general verdict.

Of these the court submitted one and two, and answers thereto were returned by the jury. The record shows that these were the only interrogatories submitted to the jury, and they are as follows:

"First—Did the testator, Andrew Bower, on the 5th day of September, 1887, in the presence of Davis S. Allhands and Edgar O. Allhands, sign his name to the paper writing, which is the subject of this contest, as and for his last will and testament?"

"Second—Did Davis S. Allhands and Edgar O. Allhands, at the request, and in the presence, of the testator, Andrew Bower, sign their names to the paper writing, which is the subject of this contest, as attesting witnesses, after the said Andrew J. Bower had signed the same?"

The court rejected and suppressed the third, fourth and fifth, and this ruling of the court was separately assigned as reasons for a new trial. The fifth interrogatory is as follows:

"Fifth—Did the testator, Andrew Bower, at the time

of the alleged execution of the paper writing, which is the subject of this contest, have mind and memory sufficient to understand the ordinary affairs of life, and act with discretion therein; and did he know his children and grandchildren, and have a general knowledge of the estate of which he was possessed?"

It is earnestly contended, and argued by appellants, that this interrogatory was pertinent and material to the issue on the question of the testator's sanity at the time of the execution of the will in contest, and they insist that under the holding of this court in the case of *Todd* v. *Fenton,* 66 Ind. 25, the action of the court in refusing to submit it to the jury cannot be sustained, and is clearly reversible error.

Appellees contend, that the interrogatory in controversy was obnoxious for the reason that it embraced more than one particular question of fact. They insist that there were three particular facts therein about which an inquiry was made, namely:

1. "Did the testator, Andrew Bower, at the time of the alleged execution of the paper writing, etc., have mind and memory sufficient to understand the ordinary affairs of life, and act with discretion therein?"

2. "And did he know his children and grandchildren?"

3. "And have a general knowledge of the estate of which he was possessed?"

By section 546, R. S. 1881; section 555, R. S. 1894, it is made the duty of the court, when requested by either party, to instruct the jury, if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing. The next following section provides, that, "when the special finding of facts is inconsistent with the general verdict the former shall control

the latter, and the court shall give judgment accordingly."

It is settled, by the decisions of this court, that where a party timely exercises this statutory right, and where other interrogatories that have been submitted to the jury, do not fully cover the pertinent and material points embraced in those requested, it will be prejudicial error for the trial court to refuse the latter. *Clegg* v. *Waterbury*, 88 Ind. 21; Elliott App. Proced., section 673 and 738; Elliott General Practice, section 911.

The case of *Todd* v. *Fenton, supra,* relied upon by appellants to sustain their contention, that the court erred in rejecting the interrogatory in question, was a proceeding to contest the validity of a will, and one of the grounds was the alleged insanity of the testator. Appellants in that case tendered and requested the court to submit to the jury certain interrogatories among which was the following, numbered eight:

"At the time said Elizabeth Todd signed said will, did she have mind and memory sufficient to understand the ordinary affairs of life and to act with discretion therein; did she know her children and grandchildren, and have a general knowledge of the estate of which she was possessed?"

This interrogatory the court refused to submit to the jury, and likewise others requested, but substituted in their stead certain other general ones and submitted the same to the jury, and answers were returned thereto.

It was held in that case that the court erred in refusing to propound the interrogatory above set out to the jury. By comparing interrogatory number five, in the case at bar, with the one rejected in the case cited, it is obvious that they are virtually identical. The only difference in effect being, that the former omits a feature urged as an objection to the latter: that of assuming

the execution of the will. In considering the question of the suppression of the interrogatory in the Todd case, this court, by Worden, J., on p. 30, of the opinion, said:

"This question, we think, should have been propounded. It was pertinent to the issue on the question of sanity. It was sufficiently single. Did the supposed testatrix have sufficient mind and memory to understand and know and act as stated in the question? It sums up very fairly the mental capacity necessary to make a will. It admits of a direct affirmative or negative answer. If answered in the affirmative, it would show sufficient mental capacity to make a will, and such answer would control the answer given to the first interrogatory propounded, which we cannot regard as anything more than a general finding upon the issue of sanity."

It is objected by the appellees, that the question rested "on an assumed fact." We see no assumption in the question, except that Elizabeth Todd signed the will. This the appellants have the right to assume, because it was fully conceded that she signed it, in the complaint, in setting forth the grounds of contest. Again, it is objected, that the question was directed to matters of evidence, and fell short of any material fact in the case. It was directed to matter of fact concerning which evidence had been given, and not to matters of evidence; and in our opinion it did not fall short of any material fact in the case. If the testatrix had mind and memory sufficient to understand the ordinary affairs of life, and to act with discretion therein, to know her children and grandchildren, and to have a general knowledge of the estate of which she was possessed, she had sufficient capacity to make a will."

The learned counsel for appellees seek to parry the force of this decision by insisting that it has been indi-

rectly overruled by later decisions of this court. But none are cited, and we have been unable to discover any that can be held to have that effect, and until it is made to appear that the holding in that case upon the point involved is not sound, we are constrained to give it our adherence, and adjudge that it is controlling upon the question now presented. The two, and only interrogatories submitted to the jury and answered by them, sought to elicit responses as to whether or not the will had been properly signed and published by the testator, and attested by witnesses. They had no relation whatever to the facts involved in the one rejected. There is evidence in the record, which entitles appellants as a matter of right to ask for a special finding upon the particular questions presented by the excluded interrogatory. Other questions arising upon the suppression of interrogatories three and four, and upon certain instructions given and refused by the court, are argued by counsel, but we do not deem it necessary to consider the same and thereby extend this opinion. However, we may suggest that these two latter interrogatories might have been framed so as to have more appropriately embraced the question of fact pertinent to and involved in the issue of fraud or undue influence, and probably are faulty for the reasons claimed by appellees, but as to that question we express no opinion.

For the error of the court in suppressing interrogatory number five, the judgment is reversed, and the cause remanded with instructions to the trial court to sustain the motion for a new trial. All concur.

Filed October 9, 1895.