HUMPHREY ET AL. v. MOTTIER, ADMINISTRATOR.

[No. 7,471. Filed October 11, 1911.]

1. WILLS.—*"Unsound Mind."*—*Statutes.*—The words "unsound mind," as used in §3112 Burns 1908, §2556 R. S. 1881, providing that "all persons, except infants and persons of unsound mind, may devise," etc., import such a degree of unsoundness of mind, as, measured according to the standard fixed by the adjudicated cases, incapacitates a person from making a will. p. 472.

2. DEEDS.— *Grantors.*— *"Unsound Mind."*— *Statutes.*— The words "unsound mind," as used in §3938 Burns 1908, §2917 R. S. 1881, providing that "persons of unsound mind and infants may not alien lands," import such a want of mental capacity as, measured by the standard fixed by the courts, incapacitates a person from executing a deed. p. 473.

3. FRAUDULENT CONVEYANCES.—*Setting Aside.*—*Persons of Unsound Mind.*—*Complaint.*—*Conclusions.*—An allegation, in a complaint to set aside an alleged fraudulent conveyance, that said grantor "was for a long time prior to said proceeding of unsound

mind, has so remained ever since, and is now of unsound mind," is not a legal conclusion, but is a sufficient allegation of such grantor's incapacity to execute the conveyance in question. *Batman* v. *Snoddy*, 132 Ind. 480, distinguished. p. 473.

4. FRAUDULENT CONVEYANCES.—*Setting Aside.—Misrepresentations. —Complaint.—*A complaint to set aside an alleged fraudulent conveyance, averring that the defendants represented to the grantor that they had performed services for him equal in value to the property, and that they well knew they had been paid for all services rendered, when considered with the other allegations of the complaint in reference to the feebleness of the grantor and the weakness of his mind, sufficiently shows that the representations made were untrue. p. 475.

5. PLEADING.—*Reply.—Overruling Demurrer to.—When Harmless. —*The alleged erroneous overruling of a demurrer to a paragraph of reply is harmless, where the judgment was not affected by any evidence admitted thereunder. p. 475.

6. APPEAL.—*Weighing Evidence.—*The Appellate Court will not weigh conflicting evidence. p. 475.

7. EVIDENCE.—*Opinions.—Insanity.—*In a suit to set aside an alleged fraudulent conveyance, evidence by a witness as to the conduct and conversations of the grantor at a time remote from the date of the execution of the deed in question, is admissible for the purpose of giving the basis for an opinion as to his mental condition at the time of the execution of the deed. p. 476.

From Switzerland Circuit Court; *Hiram Francisco,* Judge.

Suit by Hosier J. Harris, as guardian of John D. Mottier, a person of unsound mind (Eddie Mottier, as administrator of his estate, being substituted as appellee, upon such ward's death), against Lilly Humphrey and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*William T. Friedley, George B. Hall,* and *Clore, Dickerson & Clayton,* for appellants.

*Leonard E. Smith* and *F. M. Griffith,* for appellee.

LAIRY, C. J.—John D. Mottier on July 31, 1907, executed a deed, by which he conveyed certain real estate to his daughter Lilly Humphrey. He was afterward adjudged to be a person of unsound mind, and his guardian, Hosier J. Harris, brought suit against Lilly Humphrey and her husband, James Humphrey, to set aside the deed to said real

estate, and also to recover certain personal property alleged to have been transferred to appellants by appellee's ward before he was adjudged to be of unsound mind.

The complaint was in three paragraphs. The first paragraph, after making the necessary averments to authorize a suit by the guardian in his representative capacity, alleges that at the time of the execution of the deed, and for some time prior thereto, John D. Mottier was a person of unsound mind; that appellants knew his condition of mind, and procured from him the execution of the deed in question. It is further averred that the guardian disaffirmed the acts of said Mottier in the conveyance of said real estate, and demanded a reconveyance. The prayer of this paragraph is that the deed be set aside and the title quieted in said Mottier. The second paragraph proceeds upon the theory that said John D. Mottier was old and feeble in body and mind, and was susceptible to influence; that appellants exercised an undue and improper influence over him, and procured the conveyance of said real estate by such improper influence. As the finding and judgment of the court below were expressly based on the first and third paragraphs of complaint, no error can be predicated on the second, and it will not be necessary further to refer to it.

Appellants filed a demurrer to each paragraph of the complaint, on the ground that neither paragraph stated facts sufficient to constitute a cause of action. The action of the trial court, in overruling these demurrers, is one of the grounds assigned for a reversal.

Appellants take the position that the averment contained in the first paragraph of complaint, "that said Mottier was, for a long time prior to said proceeding, of unsound mind, has so remained ever since, and is now of unsound mind," is a conclusion, and is not a sufficient averment that his mental unsoundness was of such a character as to render him incapable of understanding the character of the transaction in which he was engaged at the time he made said

contract. It is contended that such a degree of mental unsoundness as rendered him incapable of transacting the ordinary affairs of life with discretion should have been shown by proper averments in the complaint, and that for the want of such averments the complaint is insufficient.

Section 3112 Burns 1908, §2556 R. S. 1881, provides as follows: "All persons, except infants and persons of unsound mind, may devise, by last will and testament,

1. any interest, descendible to their heirs, which they may have in any lands, tenements, and hereditaments, or in any personal property, to any person or corporation capable of holding the same." The Supreme Court of this State has frequently held that the phrase "of unsound mind," as used in said statute, means such a degree of unsoundness of mind as, measured according to the standard fixed by the adjudicated cases, incapacitates a person from making a will. *Blough* v. *Parry* (1896), 144 Ind. 463; *Runkle* v. *Gates* (1858), 11 Ind. 95; *Rush* v. *Megee* (1871), 36 Ind. 69; *Turner* v. *Cook* (1871), 36 Ind. 129; *Herbert* v. *Berrier* (1881), 81 Ind. 1; *Burkhart* v. *Gladish* (1890), 123 Ind. 337; *Bower* v. *Bower* (1895), 142 Ind. 194; *Wallis* v. *Luhring* (1893), 134 Ind. 447. In the case first cited the court said on page 489: "The meaning thus assigned to the phrase 'of unsound mind' by this court in construing the statute of wills was fully justified and founded in good reason. Because, according to Winslow, the phrase of unsound mind was first used by Lord Eldon to designate a state of mind not exactly idiotic, and not lunatic with delusions, but a condition of intellect between the two extremes, and unfitting the person for the government of himself and affairs. Taylor, Medical Jurisp. [11th Am. ed.] 678. To the same effect is *Den* v. *Johnson* [1819], 5 N. J. L. *455, 8 Am. Dec. 610. Thus we find that the phrase 'of unsound mind' had attained an appropriate and technical meaning in the law, conveying the idea of testamentary capacity according to the legal standards for such capacity. Another statute

in force at the time prescribing the rule for construing statutes provides that: 'Words and phrases shall be taken in their plain, or ordinary and usual sense. But technical words and phrases, having a peculiar and appropriate meaning in law, shall be understood according to their technical import.' §240 Burns 1894, §240 R. S. 1881.''

The statute that specifies what persons may make conveyances is somewhat similar to the statute on the subject of wills, and is as follows: ''Persons of unsound mind and infants may not alien lands nor any interest therein.'' §3938 Burns 1908, §2917 R. S. 1881. The courts having held that the phrase ''of unsound mind,'' as used in the statute of wills, hereinbefore quoted, is to be given a technical meaning, indicating a person who lacks testamentary capacity as defined by law, we can think of no reason why the same words used in §3938, *supra,* should not be given a similar technical meaning, and held to indicate a person who lacks mental capacity to convey real estate, when measured according to the standard fixed by the courts. Where a complaint to set aside a conveyance of real estate on account of the mental incapacity of the grantor avers that such grantor was of unsound mind at the date of said conveyance, it will be held that the phrase ''of unsound mind'' is used in the same sense in which it is used in the statute, and means that the grantor, by reason of his mental unsoundness, lacked requisite mental capacity to make a deed, as that capacity is defined by the adjudicated cases.

The question here presented has never been directly decided by either of the higher courts of this State, but it has been decided by the court of appeals of New York. In the case of *Riggs* v. *American Tract Soc.* (1881), 84 N. Y. 330, the court said: ''It is, however, seriously argued that some further allegation is necessary, 'that a person who is merely of unsound mind is not necessarily or even presumptively incapable of making such a dis-

position of his property.' But in no other words could the
pleader so well state the exact point to which the jury or
the trial court must come before a decision is rendered in
favor of the plaintiff. In *Ex parte Barnsley* [1744], 3 Atk.
168, to an inquisition, 'whether B. is a lunatic,' the return
was that 'from weakness of mind he is incapable of govern-
ing himself, and his lands and tenements;' and on motion
to quash there was much debate as to its effect, whether suf-
ficient or not. It was held bad, partly because the words in
sense and meaning were not equivalent to the answer sought
by the inquisition, and partly because the return was not
easily traversable. The chancellor, saying after reference
to investigation of the records that the proper return was
'*lunaticus or non compos mentis*' or '*insana mentis;*' or since
the proceedings have been in English, of 'unsound mind,'
which he says 'amounts to the same thing.' Thus the fact
to be found might be expressed in either of these ways. They
all import a total deprivation of sense, and he adds, "courts
of law understand what is meant by *non compos* or insane,
as they are words of a determinate signification,' and, as
before stated, either expression is represented in English by
the words used in this complaint. The allegation is, that
Ira Riggs was of 'unsound mind,' not as a conclusion of
law, but a fact founded upon other facts, some or all of
which it may be necessary to prove, but only when issue is
taken upon the one alleged."

The case of *Batman* v. *Snoddy* (1892), 132 Ind. 480, is
sometimes cited as authority for the proposition that a
pleading that proceeds upon the theory that a person is
of unsound mind, without stating the facts indicating un-
soundness, is insufficient on demurrer. 31 Cyc. 59. The
opinion in that case does not set out the complaint, or re-
cite its substantial averments. The language used by the
court in holding the complaint insufficient is susceptible of
the meaning placed upon it by the text before referred to,
but an examination of the complaint discloses the fact that

it does not contain an averment that the grantor was of unsound mind. It is therefore apparent that the question presented here could not have been decided in that case.

A demurrer was overruled to the third paragraph of the complaint, and this ruling is assigned as error. The only objection urged to this paragraph is that it is not 4. alleged that the representations made to influence the grantor were untrue. It is alleged in this paragraph that appellants represented to said Mottier that they had performed services for him equal to the value of all the property owned by him, and that they well knew that they had been paid for all services rendered. This averment, when considered in connection with the other averments of the complaint in reference to the weak and enfeebled condition of the grantor's mind, and his susceptibility to improper influences, and the knowledge of these facts possessed by appellants, overcomes the objection urged against this paragraph of complaint.

It is also claimed on behalf of appellants that the trial court erred in overruling their demurrer to the third paragraph of appellee's reply to their second paragraph 5. of answer. This reply set up the six-year statute of limitations. It clearly appears from the judgment of the court that such judgment was not affected by this paragraph of pleading, or by any evidence admissible thereunder. Appellant Lilly Humphrey was allowed $1,170 on the claim for services, set up in her second paragraph of answer. Had the court found in appellee's favor on the paragraph of reply under consideration, such a judgment could not have been rendered. The error, if any, in overruling this demurrer did not harm appellants.

We are asked to reverse the judgment on the ground that the evidence is insufficient to sustain the verdict. The evidence is voluminous and conflicting upon the question 6. of the mental condition of John D. Mottier. An examination of the evidence convinces us that there is

some evidence upon every material fact necessary to sustain the finding and judgment of the court. As this court will not weigh conflicting evidence, the judgment cannot be disturbed on this ground.

Complaint is also made of the action of the trial court in permitting witnesses to describe the conduct of said Mottier, and to detail the conversations with him at times 7. remote from the date of the execution of the deed, and to give an opinion as to whether he was of sound or unsound mind, based on the conduct or conversations so detailed. In the case of *Staser* v. *Hogan* (1889), 120 Ind. 207, the Supreme Court, speaking upon this subject said: "We think that this witness was competent as to all matters appearing in her testimony. *Lamb* v. *Lamb*, [(1886), 105 Ind. 456]. If she was competent to give an opinion as to the mental condition of the testator, she was competent to give a statement of all she knew about him, both before and after it is claimed that his mind failed, together with what he did and said, and the change, if any, in his manner, with a view of enabling the jury to weigh such opinion when given; indeed, without such statement she could not be permitted to give her opinion." The court committed no error in admitting evidence of this character.

Finding no error, the judgment is affirmed.